**UNITED STATES**

**v.**

**Richard H. COVER, 270 72 6577, Fireman (E–3), U.S. Navy.**

**NMCM 82 2744.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 22 Jan. 1982.

Decided 25 Feb. 1983.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

LT William V. Cerbone, Jr., JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and BARR and MALONE, JJ.

PER CURIAM:

Appellant has assigned eight errors for our consideration. We find no merit to errors I, II, III and VII. In light of our disposition of Assignments V and VI, we need not address error IV. Furthermore, because a rehearing may be ordered, it is premature to reach Assignment VIII, which

asks us to test the sufficiency of the evidence to support appellant's conviction of rape and communicating a threat.

While the obvious issue at trial was whether the sexual intercourse, which admittedly occurred, was the product of consent or force, the primordial question facing the triers of fact was who to believe—Miss F, the alleged victim, or appellant, the alleged assailant. Our review yields the conclusion that the contradictions in the testimony of Miss F and appellant reach not only to the issue of consent or rape but also to the veracity of their respective testimonies describing the nature of their prior relationship. The issue of credibility thus so permeated the case as to make a decision respecting it virtually controlling on the question of guilt or innocence. In this posture, any evidence which would tend to corroborate either of the conflicting testimonies concerning their prior relationship would be highly probative of the credibility issue and, thus, both material and relevant to the resolution of that issue. Fred Searles' expected testimony was conceded to be such evidence. In this context we consider Assignments of Error V and VI:

V

THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING APPELLANT'S REQUEST THAT THE CASE BE CONTINUED UNTIL A MATERIAL DEFENSE WITNESS COULD BE FOUND.

VI

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN HE REFUSED TO COMPEL THE GOVERNMENT TO PRODUCE A DEFENSE REQUESTED WITNESS DEEMED MATERIAL AND NECESSARY BY THE CONVENING AUTHORITY.

▮▮▮ We agree with both assertions. As a result of the prior rulings of the military judge respecting Miss D as a potential witness,[1] Searles' testimony would have been the only *complete* and available evidence to break the credibility issue "logjam" created by the testimony of Miss F and appellant. Faced with the unexpected, and unauthorized, departure of Searles from the situs of trial, the defense requested that the Government be required to take appropriate steps, including the utilization of federal marshalls, to enforce the subpoena which had directed his presence for trial. We view this request, and we believe it was so treated by the military judge, as a motion for a continuance until such time as either the subpoena was fully enforced, with the resultant presence of the witness at trial, or the Government had demonstrated good faith, though unavailing, efforts in attempting its enforcement. *See United States v. Thomson,* 3 M.J. 271 (C.M.A.1977). The denial of this motion by the military judge was, under the distinct facts of this case, an abuse of discretion. His mere conclusion that there was not complicity on the part of the Government in causing the absence on Searles was an insufficient treatment of the issue of whether reasonable cause for a continuance existed. For the *legal* analysis of this issue, we specifically adopt the reasoning set forth in *United States v. Rhodes,* 14 M.J. 919 (A.F.C.M.R. 1982). The factual distinctions between *Rhodes* and the case *sub judice* are not controlling. Procedures governing the process of a warrant of attachment, to reach the "recalcitrant" civilian witness, have long been a part of military jurisprudence, and the issuing of such a warrant, as an instrument of Government power capable of being exercised by order of the court, was a response peculiarly suited to the exi-

---

1. Though we do not decide the merits of Assignment of Error IV, we tender the observation that the potential loss of Searles' testimony, when viewed in the context of the military judge's prior rulings of preclusion concerning the deposition and/or compelled presence of Miss D, so predictably altered the delicate balance of fairness in the trial as to necessitate a greater degree of circumspection by the military judge in determining what would be reasonable cause for a continuance than might otherwise be required.

gencies of the moment. *See* Article 46, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 846; Paragraph 115d(3), *Manual for Courts-Martial 1969 (Rev.)* (MCM). *United States v. Kilby,* 3 M.J. 938 (N.C.M.R. 1977), cited by the Government, is inapposite. We perceive a vast distinction between requiring the court to grant a continuance to facilitate the production of a witness whose whereabouts were never known, and as to whom "all diligence and due effort" were made by the Government to locate him, and the granting of a continuance in order to compel the Government, as an initial step, to exercise its warrant power against a witness whose location, his place of employment, within a few days would be certain.

 We would further note that in exercising his discretion on whether or not to grant a continuance, the military judge must be guided by his statutory responsibility to assure that a trial by court-martial is conducted in a fair and impartial manner and in accordance with the law. This necessarily includes the duty to ensure that an individual accused receives a fair trial. *United States v. Graves,* 1 M.J. 50 (C.M.A. 1975); Paragraph 39b, MCM. In so doing, he must weigh the interests of both parties against the equities of the situation *then* extant. *United States v. Dunks,* 1 M.J. 254 (C.M.A.1976). Neither evidence nor argument was advanced by, or demanded by the court from, the Government which would suggest that a delay in the trial would prejudice its case. In contrast, the interest of appellant was clear, substantial, and self-evident from the record.

 We hold therefore, that the military judge abused his discretion in refusing to grant the requested continuance and, by that refusal, reducing the defense to but one alternative—a stipulation of testimony fraught with incompleteness. While under some circumstances an accused may be properly compelled to stipulate to testimony if he desires to place a witness' evidence before the trier of fact, *United States v. Tangpuz,* 5 M.J. 426 (C.M.A.1978), we believe that under the peculiarly distinct facts

of this case *without any effort* made to exercise the Government's warrant power under Article 46, UCMJ, and Paragraph 115d(3), MCM, this was an unacceptable alternative to personal presence. Had the effort been made and proven unavailing, our disposition would be quite different. We cannot say beyond a reasonable doubt that Searles' live testimony, with such corroborative effect it may have given to appellant's description of his prior relationship with Miss F, and hence, bolstering of his credibility, would not have tipped the balance in appellant's favor. Nor is the evidence, absent Searles' testimony, so strong as to show no reasonable possibility of prejudice. *United States v. Lucas,* 5 M.J. 167 (C.M.A.1978). As there existed a reasonable likelihood that Searles' testimony could have affected the judgment of the court members on the primary issue of credibility, and thus that of consent, prejudice to appellant is apparent and reversal is required. *United States v. Hampton,* 7 M.J. 284 (C.M.A.1979).

The findings of guilty and the sentence are set aside. We believe the prejudice to the rights of appellant can be cured by a rehearing. Paragraph 58d, MCM. A rehearing may be ordered.